23 C. C. P. A. (Customs)

## CARL ZEISS, Inc., v. UNITED STATES.

### Customs Appeal No. 3832.

Court of Customs and Patent Appeals.
April 15, 1935.

James W. Bevans, of New York City, for appellant.

Joseph R. Jackson, Asst. Atty. Gen. (Charles D. Lawrence, Sp. Asst. to Atty. Gen., and Thomas J. Canty, Sp. Atty., of New Rochelle, N. Y., of counsel), for the United States.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a judgment of the United States Customs Court in reappraisement No. 105502-A.

Merchandise, consisting of a prism binocular, 6x24, the figure 6 meaning "six times magnification," and the figure 24 meaning "the diameter of the objective lens, in millimeters," imported from Germany, was appraised by the local appraiser at the port of New York upon the basis of the American selling price as defined in section 402 (g) of the Tariff Act of 1930 (19 USCA § 1402 (g), in accordance with a proclamation of the President of the United States, dated December 14, 1932, No. 2021, 47 Stat. 2545 (62 Treas. Dec. 674), issued under the so-called flexible tariff provisions—section 336—of the Tariff Act of 1930 (19 USCA § 1336). The section, so far as material to the issues here involved, provides:

"Sec. 336. *Equalization of Costs of Production.*

"(a) *Change of Classification or Duties.* In order to put into force and effect the policy of Congress by this Act [chapter] intended, the commission (1) upon request of the President, or (2) upon resolution of either or both Houses of Congress, or (3) upon its own motion, or (4) when in the judgment of the commission there is good and sufficient reason therefor, upon application of any interested party, shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings. The commission is authorized to adopt such reasonable procedure and rules and regulations as it deems necessary to execute its functions under this section. The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

"(b) *Change to American Selling Price.* If the commission finds upon any such investigation that such differences can not be equalized by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price (as defined in section 402 (g) [section 1402 (g)] of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute, and no such rate shall be increased.

"(c) *Proclamation by the President.* The President shall by proclamation approve the rates of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production."

The importer appealed to reappraisement, claiming that the involved merchandise, which it is conceded is dutiable under paragraph 228 (a), section 1, of the Tariff Act of 1930 (19 USCA § 1001, par. 228 (a), at 60 per centum ad valorem, should have been appraised at its foreign or export value, whichever is higher, rather than upon the basis of the American selling price, as defined in section 402 (g) of that act (19 USCA § 1402 (g).

The pertinent provisions of section 402 read as follows:

"(c) *Foreign Value.* The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

"(d) *Export Value.* The export value of imported merchandise shall be the market value or the price, at the time of ex-

portation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. * * *

"(g) *American Selling Price.* The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article." 19 USCA § 1402 (c, d, g).

Paragraph 228 (a), § 1 (19 USCA § 1001, par. 228 (a), which provides for "prism-binoculars, * * * frames and mountings therefor, and parts" thereof at 60 per centum ad valorem, also provides for many other instruments. Subsection (b) of that paragraph, § 1 (19 USCA § 1001, par. 228 (b), also provides for many instruments, including "opera or field glasses (not prism binoculars), telescopes, microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing" at 45 per centum ad valorem.

On June 1, 1932, the United States Senate adopted S. Res. 219, see Congressional Record, vol. 75, pt. II, pp. 11710, 11711, authorizing and directing the United States Tariff Commission to investigate for the purpose of section 336, supra:

" * * * The differences in the cost of production between the domestic article or articles and the competitive foreign article or articles, and to report at the earliest practicable date, on the following items: * * *

"2. Optical instruments as described in paragraph 228 (a) (b)."

On June 10, 1932, the Senate adopted S. Res. 227, see Congressional Record, vol. 75, pt. II, p. 12550, which rescinded S. Res. 219, supra, and directed the United States Tariff Commission to investigate for the purpose of section 336, supra:

" * * * The differences in the cost of production between the domestic articles and the foreign articles, and to report, at the earliest practicable date, upon the following articles: * * *

" '2. Optical instruments of a class or type used by the Army, Navy, or Air Force for fire control and parts thereof.' "

Thereafter, on August 18, 1932, the United States Tariff Commission gave due public notice to all parties interested of a public hearing to be held at the office of the Commission in Washington, D. C., at 10 a. m. on the 18th day of October, 1932, of an investigation under and by virtue of the provisions of section 336, supra, in accordance with S. Res. 227, supra, relative to " * * * the differences in costs of production of, and of all other facts and conditions enumerated in said section with respect to, *Optical instruments of a class or type used by the Army, Navy, or Air Force for fire control, and parts thereof,* described in paragraph 228, § 1 of title 1 of said Tariff Act, be, and hereby is, extended to include, Frames and Mountings Therefor, also described in paragraph 228 of said act, being wholly or in part the growth or product of the United States, and of and with respect to like or similar articles wholly or in part the growth or product of competing foreign countries." (Italics ours.)

Appellant received notice of the time and place of the public hearing, as published by the Tariff Commission, but, as it "was not interested in the importation of optical instruments for fire control," of the class or type *used by* the Army, Navy, or Air Force of the United States, it was not represented at the hearings.

It appears from the report to the President by the Tariff Commission, which includes a summary of the information obtained in the investigation and the Commission's findings or recommendations, that so-called optical fire-control instruments of a class or type *used by* the United States Army, Navy, and their respective Air Forces "are for the most part instruments of a secret character built by the Government in ordnance shops and by domestic

manufacturers who engage to observe the confidential character of the undertaking; or they are instruments with special features introduced to meet peculiar military needs, are not salable to the general public, and costs of production of the domestic and imported instruments of this character, adequate for an adjustment of the present rates of duty, could not be obtained. *The only significant exceptions are commercial prism-binoculars which are used in military operations to observe the effectiveness and accuracy of gunfire.* Prism-binoculars are produced in the United States and abroad; the domestic and foreign products are comparable, and the difference in costs of production is ascertainable"; that the prism binoculars referred to "must be of high grade and relatively high magnification"; and that those "having a foreign value of more than $12 each and having a magnification greater than 5 diameters *are suitable* for optical fire-control instruments and that other prism-binoculars *are not suitable* for optical fire-control instruments." (Italics ours.) Under the heading "Scope of the Investigation," the Commission again stated that practically all so-called fire-control instruments *used by* the Army, the Navy, and their respective Air Forces were of a "special, and often secret character," and that "cost comparisons" of such and similar articles, for purposes of section 336, supra, were not feasible; that it appeared, however, from the investigation, that "comparable commercial types of prism-binoculars *employed by the military and naval services* are produced both in the United States and abroad. Cost differences are ascertainable for the domestic product and the highest grades of the imported glasses with which the domestic products are comparable"; and that therefore the "investigation of costs of production has * * * been confined to high-grade prism-binoculars of the *types suitable for military or naval use.*" (Italics ours.)

It appears from the report of the Commission, as well as from the evidence in the case at bar, that prism binoculars are classified according to their magnifying power, the usual powers being 4, 6, 7, 8, 10, 12, 16, and 18 diameters; that the "6x-30 binocular magnifies the image six times and has an objective lens with an effective diameter of 30 millimeters, or 1.18 inches. Similarly a 10x-50 glass, the largest in common use, magnifies ten times and has an objective of 50 millimeters, or 1.97 inches"; that the domestic production of prism bin-

oculars is confined to one producer, located at Rochester, N. Y.; that the differences in costs of production between comparable domestic binoculars and those produced in competing countries, the principal competing country being Germany, "were calculated in detail for six representative sizes of prism-binoculars *suitable for use by* the armed forces of the United States similar in magnifying power, size of objective, and method of focusing to the best grades of imported glasses." (Italics ours.)

The Commission concluded the summary of its investigation with the statement that its investigation included such optical instruments as were *suitable for* fire-control purposes by the military and naval services, and distinguished between those *suitable,* and those *not suitable,* for such purposes. We quote from its report:

"Inasmuch as the Senate resolution and the commission's order of investigation confine this study to those instruments *suitable for* fire-control purposes by the military and naval services, it is necessary to distinguish, for purposes of customs administration, such instruments from superficially similar articles not within the scope of the investigation. For the purposes of segregating the instruments within the scope of the investigation a bracket is set up introducing the elements of magnifying power and price. The proper breaking point for such a bracket, so far as magnification is concerned, is 5 diameters, although no such binocular is made. It should be noted that if a binocular were actually made with a magnification of 5 diameters its cost would be substantially the same as that of a binocular with a magnifying power of 6 diameters, if having the same size lenses and prisms. The proper breaking point for a separate value bracket is a foreign value of $12 each, inasmuch as all instruments *suitable for military* purposes are valued at more than $12, *while all instruments of a lower value but having sufficient magnifying power for military purposes are not of sufficiently high quality.*" (Italics ours.)

It further appears from the letter of transmittal to the President by the chairman of the Tariff Commission that the draft of the President's proclamation was, at that time, being submitted through the Department of State "in compliance with Executive order of June 24, 1931."

The President, in his proclamation, stated that the Tariff Commission had investigated the "differences in costs of produc-

tion of, and all other facts and conditions enumerated in said section with respect to, optical instruments of a class or type *used by* the Army, Navy, or Air Force for fire control, frames and mountings therefor, and parts of any of the foregoing"; that in the course of the investigation a hearing was held "of which reasonable public notice was given, and at which parties interested were given reasonable opportunity to be present, to produce evidence, and to be heard"; that the Commission had reported to the President the results of its investigation and findings, with respect to the differences in costs of production of optical instruments "of a class or type *used by* the Army, Navy, or Air Force for fire control"; that it had found by such investigation that the duty fixed in paragraph 228 (a), § 1, supra, on prism binoculars having a magnification greater than 5 diameters, and having a foreign value of more than $12 each, frames and mountings therefor and parts thereof, did not equalize the differences in costs of production of the domestic and like or similar foreign articles; and that it was necessary, in order to equalize such differences in costs of production, that the 60 per centum ad valorem rate provided in paragraph 228 (a), § 1, supra, for prism binoculars should be based upon the American selling price, as defined in section 402 (g), supra. (Italics ours.)

The President not only approved the rate of duty based upon the American selling price, recommended by the Commission, but also approved the report of the Commission.

Shortly after the issuance of the President's proclamation, and before it became effective, appellant, together with other importers, protested to the Tariff Commission that the notice of the investigation was inadequate; that it did not advise them of the fact that prism binoculars, of the type here involved, were under investigation by the Commission. Appellant further represented that it could establish that such prism binoculars were not of the type or class *used by* the Army, Navy, or their respective Air Forces, and requested that the hearings be reopened so that it might establish such facts.

In reply to that communication, the Tariff Commission stated that it had given public notice of its investigation "with respect to optical instruments of a class or type *used by* the Army, Navy, or Air Force for fire control, and parts thereof," and that

the Commission had found from its investigation, and had so reported to the President, that "prism-binoculars having a foreign value of more than $12 each and having a magnification greater than 5 diameters *are suitable for* fire-control instruments," and accordingly denied appellant's application. (Italics ours.)

Appellant contended before the trial court and the appellate division of the United States Customs Court, and contends in this court, that the notice published by the Tariff Commission relative to its investigation was not a valid and legal notice of the investigation, because, it is claimed, the Commission did not confine its investigation within the limits of the published notice. Appellant further claims that, if the notice was sufficient, and the investigation as made by the Commission legal, then, in that event, the involved prism binocular is not within the purview of the presidential proclamation.

Both the trial court and the appellate division of the United States Customs Court overruled appellant's contentions, and an appeal was taken to this court.

It will be observed that, although the Tariff Commission was directed by S. Res 227, supra, to investigate the differences in cost of production, and all other facts and conditions enumerated in section 336, supra, with respect to "optical instruments of a class or type *used by* the Army, Navy, or Air Force for fire control," etc., and that, although, according to the notices of the public hearings, the investigation was limited to such instruments, frames, and mountings therefor, and parts thereof, the Commission extended the scope of the investigation, without any public notice whatsoever, to optical instruments *"suitable for use"* by the Army, Navy, or their respective Air Forces. (Italics ours.)

The President, although not required by the provisions of section 336, supra, to accept the results or findings reported by the Tariff Commission, is required to limit his consideration of the case to the evidence presented to that body, and to approve the rates of duty and changes in basis of value specified by it, "if in his judgment such rates of duty and changes [and changes in basis of value] are shown by such investigation * * * to be necessary to equalize such differences in costs of production." Feltex Corp. v. Dutchess Hat Works, 71 F.(2d) 322, 323, 21 C. C. P. A. (Customs) 463, T. D. 46956.

For the purposes of the provisions of section 336, supra, the President of the United States is the agent of the Congress, and he may not act under those provisions until a legal investigation has been made by the Tariff Commission. One of the prerequisites of such an investigation is the giving of "reasonable public notice" thereof to all interested parties, in order that they may, if they so desire, be present, produce evidence, and be heard. Hampton, Jr., & Co. v. United States, 14 Ct. Cust. App. 350, T. D. 42030, affirmed in Hampton, Jr., & Co. v. United States, 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624; William A. Foster & Co. (Inc.) et al. v. United States, 20 C. C. P. A. (Customs) 15, T. D. 45673; Norwegian Nitrogen Products Co. v. United States, 20 C. C. P. A. (Customs) 27, T. D. 45674; United States v. Fox River Butter Co., 20 C. C. P. A. (Customs) 38, T. D. 45675; United States v. S. Leon & Co., 20 C. C. P. A. (Customs) 49, T. D. 45677; Feltex Corp. v. Dutchess Hat Works, supra.

■ Although, of course, the description of merchandise, concerning which an investigation is to be had, need not be as precise as may be required in some legal actions, the Commission is certainly required to be sufficiently definite in its notices of its hearings, as to fairly, adequately, and reasonably acquaint interested parties with the purpose and scope of its investigations; otherwise the statute would be circumvented, and, as a consequence, importers, American industries, and the general public might be deprived of their statutory rights.

■ Obviously, the publication of a notice of an investigation of optical instruments of a class or type *used by* the Army, Navy, or their respective Air Forces, does not suggest to interested parties the holding of an investigation relative to optical instruments *suitable to be used by* such armed forces. Many articles might be included in an investigation of optical instruments *suitable for use,* which would not be included in an investigation of optical instruments of a class or type *used by,* the Army, Navy, or their respective Air Forces.

We think it clearly appears from the report of the Tariff Commission that its investigation was not confined to the matters contained in its public notice, that is, to the differences in the costs of production of foreign and similar domestic optical instruments of the class or type *used by* the Army, Navy, or their respective Air Forces, but was, in fact, extended in scope so as to include the differences in costs of production of foreign and domestic optical instruments suitable for use by such armed forces; that its findings and recommendations included in its report to the President were not limited to the scope of the Senate Resolution and the public notice of the hearing, but were based upon evidence relative to optical instruments *suitable for* such use; and that the findings and recommendations of the Commission were therefore invalid.

It is true that, under the heading "Conclusions," the Commission stated:

"(b) That the rate of duty shown by the investigation to be necessary to equalize the difference in costs of production of optical instruments of a class or type used by the Army, Navy, or their respective air forces for fire control, frames and mountings therefor, and parts of any of the foregoing, within the limit provided in said section 336, for prism-binoculars, having a magnification greater than 5 diameters, and valued at more than $12 each, frames and mountings therefor, and parts of any of the foregoing, is the rate of 60 per cent ad valorem based upon the American selling price, as defined in section 402 (g) of the tariff act of 1930, of prism-binoculars, having a magnification greater than 5 diameters, frames and mountings therefor, and parts of any of the foregoing, manufactured or produced in the United States.

*"Appended to this statement of findings is a summary of information obtained in this investigation."* (Italics ours.)

We think, however, that such conclusions should be deemed to be based upon the "Findings of the Commission" and the information which the Commission stated it had received in the investigation under the heading "Summary of information obtained in the investigation"; and that such findings, and the information which it said it had obtained, do not sustain the conclusions above quoted, but do, in fact, relate to and include all prism binoculars *suitable for* use by the Army, Navy, or Air Forces for fire control.

Furthermore, the proclamation of the President contains no finding that prism binoculars of the class or type described therein were of a class or type used by the Army, Navy, or their respective Air Forces for fire control.

Under the related circumstances, we may not indulge the legal presumption that there was substantial evidence before the Tariff Commission that "prism-binoculars, having a magnification greater than five diameters, and valued at more than $12 each," including those here involved, were of a class or type *used by* the Army, Navy, or their respective Air Forces for fire control, as argued by counsel for the government. However, in view of the facts hereinbefore stated, that question is immaterial.

For the reasons stated, we must hold that the proclamation of the President was without authority of law, illegal, and void; that the appraisement and the reappraisement of the involved merchandise made on the basis of the American selling price, in accordance with such proclamation, were therefore without authority of law, illegal, and void; and that the appellate division of the United States Customs Court erred in affirming the judgment of the trial court.

Accordingly, the judgment is reversed, and the cause remanded for further proceedings in accordance with the stipulation entered into by counsel "that if the Court finds the American selling price is not the proper dutiable value, that the entered value is the proper dutiable value."

Reversed and remanded.