ELOF HANSSON, INC.

v.

UNITED STATES.

Reappraisement No. 262982–A.

United States Customs Court,
Third Division.
Nov. 9, 1959.

Sharp & Bogan, Washington, D. C. (James R. Sharp, Raoul Berger, and Alfred R. McCauley, Washington, D. C., of counsel), for the appellant.

George Cochran Doub, Asst. Atty. Gen. (Daniel I. Auster, New York City, trial attorney), for the appellee.

MacLeish, Spray, Price & Underwood, Chicago, Ill. (Robert C. Keck, Chicago, Ill., of counsel), as amicus curiae.

Before JOHNSON, DONLON, and RICHARDSON, Judges.

JOHNSON, Judge.

This is an application for review by the appellant (plaintiff below) of a decision and judgment of the trial court holding that a finding of dumping with respect to hardboard imported from Sweden, made by the Acting Secretary of the Treasury on August 26, 1954 (89 Treas.Dec. 197, T.D. 53567), was valid, and that the values returned by the appraiser under the Antidumping Act of 1921, 19 U.S.C.A. § 160 (May 27, 1921, ch. 14, § 201, 42 Stat. 11; June 17, 1930, ch. 497, title IV, § 651(d), 46 Stat. 763), with respect to the merchandise involved herein, were valid. Elof Hansson, Inc. v. United States, 41 Cust.Ct. 519, Reap. Dec. 9212.

The primary issue before us is whether the Administrative Procedure Act (5 U.S.C.A. § 1001, June 11, 1946, ch. 324; 60 Stat. 237, as amended) applied to findings of dumping made under the Antidumping Act of 1921.

The following facts were stipulated at the trial or appear from the record presented:

An investigation which culminated in the said finding of dumping was commenced by the Secretary of the Treasury on or about March 31, 1953, and, thereafter, on October 15, 1953, the Acting Commissioner of Customs directed appraisement to be withheld on all unappraised entries of hardboard from Sweden. This importer and others received a notice of such withholding as to entries unappraised as of said date and succeeding entries, and such withholding continued until the issuance of said finding of dumping. No notice in regard to the dumping investigation was published in the Federal Register prior to the publication of the finding of dumping, T.D. 53567, and no finding or statement was made therein that notice and public procedure thereon were impracticable, unnecessary, or contrary to the public interest.

During the course of the investigation, Examiner Herbert Geller discussed with representatives of the plaintiff the fact that the Treasury Department had received a complaint alleging dumping of hardboard from Sweden and was making an investigation and desired certain data from plaintiff's Swedish suppliers. Pursuant to this request, analytical data from Sweden were submitted to the appraiser on May 5, 1953. In addition, Treasury Department officials received correspondence and documents from the plaintiff and its attorneys, other importers and their representatives, and the domestic industry (defendant's exhibits B–1 through B–15, C–1 through C–12). Conferences were held with plaintiff's attorneys and with representatives of the Swedish Embassy.

John Patterson Weitzel, assistant general counsel of the United States Treasury Department, testified that, in the opinion of the Treasury Department, the Administrative Procedure Act did not apply to the procedure followed in the hardboard investigation, and counsel for the plaintiff was so advised.

The Antidumping Act of 1921, under which the Secretary's finding was made, provides:

"Sec. 201. (a) That whenever the Secretary of the Treasury (hereinafter in this Act called the 'Secretary'), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value, then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.

\* \* \* \* \* \*

"Sec. 202. (a) That in the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary has made public a finding as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, if the purchase price or the exporter's sales price is less than the foreign market value (or, in the absence of such value, than the cost of production) there shall be levied, collected, and paid, in addition to the duties imposed thereon by law, a special dumping duty in an amount equal to such difference."

Under this statute, it has been held that the Secretary has taken every step required by the law where he has made such investigation as he thought necessary, has found that an industry of the United States is being or is likely to be injured by reason of the importation of the merchandise, has found that the merchandise has been sold or is likely to be sold at less than fair value, and has made his finding public to the extent he deems necessary, together with a description of the merchandise in such detail as is necessary for the guidance of appraising officers. Kleberg & Co., Inc. v. United States, 71 F.2d 332, 21 CCPA 110, 114, T.D. 46446.

All of this has been done in the instant case, but plaintiff claims that by reason of the Administrative Procedure Act of 1946, supra, additional procedural requirements must be met.

The Administrative Procedure Act was enacted subsequent to the Antidumping Act of 1921 for the purpose of improving the administration of justice by prescribing fair administrative procedures for Federal agencies. The term "agency" is defined as "each authority (whether or not within or subject to review by another agency) of the Government of the United States other than Congress, the courts, or the governments

of the possessions, Territories, or the District of Columbia." Section 2(a), 5 U.S.C.A. § 1001. (Certain agencies, not here pertinent, were expressly excluded from the operation of the act.) The act further defines certain agency procedures as follows:

"Definitions

"Sec. 2. As used in this Act—

" * * * (c) Rule and rule making.—'Rule' means the whole or any part of any agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or to describe the organization, procedure, or practice requirements of any agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing upon any of the foregoing. 'Rule making' means agency process for the formulation, amendment, or repeal of a rule.

"(d) Order and adjudication.— 'Order' means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency in any matter other than rule making but including licensing. 'Adjudication' means agency process for the formulation of an order."

The section which the plaintiff claims is applicable to antidumping proceedings and was not complied with by the Secretary provides:

"Rule Making

"Sec. 4. * * *

"(a) Notice.—General notice of proposed rule making shall be published in the Federal Register (unless all persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law) and shall include (1) a statement of the time, place, and nature of public rule making proceedings; (2) reference to the authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved. Except where notice or hearing is required by statute, this subsection shall not apply to interpretative rules, general statements of policy, rules of agency organization, procedure, or practice, or in any situation in which the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

"(b) Procedures.—After notice required by this section, the agency shall afford interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity to present the same orally in any manner; and, after consideration of all relevant matter presented, the agency shall incorporate in any rules adopted a concise general statement of their basis and purpose. Where rules are required by statute to be made on the record after opportunity for an agency hearing, the requirements of sections 7 and 8 shall apply in place of the provisions of this subsection."

In determining that the Administrative Procedure Act was not applicable to the making of findings under the Antidumping Act, the court below held that the grants of power in these acts were in direct conflict; that the former purported to cut down what the latter had conveyed; and that the legislative history showed that it was the understanding of Congress that the rule-making requirements of the Administrative Procedure Act were not applicable to dumping proceedings.

In considering the scope of the Administrative Procedure Act, it is to be noted that, for more than 10 years prior to its enactment, Congress had been considering proposals for a general statute respecting administrative law and procedures. (Administrative Procedure Act, legislative history, 79th Cong., 2d sess., Sen.Doc.No.248, hereinafter referred to as legislative history.) Because of the growth of this branch of Government, Congress had become convinced that there should be a simple and standardized plan of administrative procedure. The Administrative Procedure Act was intended to put such a plan into effect. (Legislative history, p. 297.)

The Senate Committee on the Judiciary reported that:

"* * * the bill must reasonably protect private parties even at the risk of some incidental or possible inconvenience to or change in present administrative operation." [Legislative history, p. 191.]

The House Committee on the Judiciary reported:

"Manifestly the bill does not unduly encroach upon the needs of any legitimate government operation, although it is of course operative according to its terms even if it should cause some administrative inconvenience or changes in procedure. * * * The bill is meant to be operative 'across the board' in accordance with its terms, or not at all. Where one agency has been able to demonstrate that it should be exempted, all like agencies have been exempted in general terms." [Legislative history, p. 250.]

In Wong Yang Sung v. McGrath, 339 U.S. 33, 36, 70 S.Ct. 445, 448, 94 L.Ed. 616, the Supreme Court pointed out:

"The Administrative Procedure Act of June 11, 1946, supra, is a new, basic and comprehensive regulation of procedures in many agencies, more than a few of which can advance arguments that its general-

ities should not or do not include them. * * * "

 It is evident from a reading of the legislative history of the Administrative Procedure Act that it was intended to apply generally to all administrative agencies and procedures, except where specific exemptions were made. It was enacted subsequent to the Antidumping Act of 1921 and, therefore, manifests a later will of Congress. Although it did not in terms repeal the Antidumping Act or any of its provisions, and although repeals by implication are not favored, nevertheless, it is well settled that where the provisions of two acts are irreconcilable, the later statute repeals the earlier one to the extent of the conflict. United States v. Yuginovich, 256 U.S. 450, 41 S.Ct. 551, 65 L.Ed. 1043; Posadas v. National City Bank, 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351; State of Georgia v. Pennsylvania Railroad Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051.

In the report of the Committee on Judiciary of the House of Representatives, it is stated:

"* * * Any inconsistent agency action or statute is in effect repealed. No agency action taken or refused would be lawful except as done in full compliance with all applicable provisions of the bill and subject to the judicial review provided." [Legislative history, p. 281.]

In an explanation of the bill, Congressman Walter stated:

"* * * The principal purpose of this section [section 4] is, where other statutes do no require a hearing, to provide that the legislative functions of administrative agencies shall so far as possible be exercised only upon public participation on notice as provided in section 4(a) and (b)." [Legislative history, p. 257.]

██ ██ It is clear, therefore, that Congress intended that the Administrative Procedure Act should supersede any in-

consistent provisions of prior statutes and that the rule-making functions of agencies be exercised after notice and public participation. Congress was well aware of the Secretary's antidumping functions, which were described in a monograph prepared by the Attorney General's Committee on Administrative Law (77th Cong., 1st sess., Sen.Doc.No. 10, part 14). Since such functions were not specifically exempted from the Administrative Procedure Act, it is evident that Congress intended that they be governed by it.

The subsequent history of the Antidumping Act reinforces this view. When the act was amended in 1954 by the Customs Simplification Act of 1954 (68 Stat. 1136), the Ways and Means Committee of the House of Representatives reported that it expected the Tariff Commission, which was thereafter to make the investigation, to give interested parties notice and an opportunity to present their views (83d Cong., 2d sess., H.R. report No. 2453).

In 1958, the Antidumping Act was again amended (72 Stat. 583) by requiring public notice where the Secretary has reason to believe or suspect sales at less than foreign market value. The Committee on Ways and Means of the House of Representatives reported that it had been the practice to put out a press release in such cases and that there had been no established practice as to publication of Tariff Commission decisions (85th Cong., 1st sess., H.R. report No. 1261). It was, therefore, not inconsistent with, but supplemental to, the Administrative Procedure Act, to make specific provisions for the publication of notice. The amendment was not a declaration of a new policy, but a more explicit expression of the purpose of the prior law, apparently made necessary by the administrative construction or misconstruction of that law. Jordan v. Roche, 228 U.S. 436, 33 S.Ct. 573, 57 L.Ed. 908.

█ It is next claimed that the Secretary, in making a finding of dumping, is not an administrative agency, but an agent of Congress and, therefore, not controlled by the Administrative Procedure Act. Reliance is placed upon a statement in T. M. Duche & Sons v. United States, 39 CCPA 186, C.A.D. 485, certiorari denied 344 U.S. 830, 73 S.Ct. 35, 97 L.Ed. 646, that "the President, acting under the flexible tariff statute, cannot be regarded as an administrative agency, but is an agent of Congress." The issue in that case was whether, under the Administrative Procedure Act, the plaintiff was entitled to a judicial review of the proceedings before the Tariff Commission to determine if it had exceeded its statutory authority. It was held that, under section 514 of the Tariff Act of 1930, the action of the Commission could be reviewed to determine whether it had followed the statutory formula in compiling its report to the President but that the Administrative Procedure Act did not authorize any broader review of proceedings before the Tariff Commission or of the discretionary acts of the President. The issue here is entirely different, involving the effect of non-compliance with certain procedural requirements of the Administrative Procedure Act. The decision and statements of the court in the Duche case are not applicable to the question before us.

All administrative agencies are, in a sense, agents of Congress, since, through the rule-making function, they legislate on the administrative level within the confines of the granting statute. Willapoint Oysters, Inc. v. Ewing, 9 Cir., 174 F.2d 676, certiorari denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527, rehearing denied 339 U.S. 945, 70 S.Ct. 793, 94 L.Ed. 1360.

█ The Secretary, under the Antidumping Act, finds facts which bring into operation certain consequences provided for by the statute. His function is similar to that of other administrative agencies. Opp Cotton Mills, Inc. v. Administrator, etc., 312 U.S. 126, 144, 657, 61 S.Ct. 524, 85 L.Ed. 624; Yakus v. United States, 321 U.S. 414, 424–425, 64 S.Ct. 660, 88 L.Ed. 834. To exempt him from the provisions of the Adminis-

trative Procedure Act would open the door to exceptions for all administrative agencies, contrary to the intent of Congress. Exemptions from the Administrative Procedure Act are not lightly to be presumed (Marcello v. Bonds, 349 U.S. 302, 310, 75 S.Ct. 757, 99 L.Ed. 1107), and there is no reason to make such presumption in the instant case.

■ The next question to be determined is whether the Secretary's finding of dumping constitutes rule making.

. What the Secretary does under the Antidumping Act is to conduct an investigation and make a finding that an industry of the United States is being or is likely to be injured by the importation of the particular merchandise and that merchandise of that class or kind is being sold or is likely to be sold at less than its fair value. After such finding is made, it is the duty of the appraiser to ascertain and report the foreign market value or the cost of production and the purchase price or the exporter's sales price, and, if the latter is less than the former, a special dumping duty is assessed by the collector. Such duty is applicable to all merchandise of such class or kind as to which the appraiser has made no report of value to the collector. Therefore, it includes merchandise previously imported but as to which appraisement has been withheld.

Rule making has been defined by the Administrative Procedure Act as agency process for the formulation of a "statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." It is legislation on the administrative level and is normally directed primarily at situations rather than particular persons. Willapoint Oysters, Inc. v. Ewing, supra. An exercise of the rule-making power is legislative in character, looking to the future, and changing existing conditions by a new rule. George A. Rheman Company v. United States, D.C., 133 F.Supp. 668. Under the flexible tariff act, it has been held that what is done by the Tariff Commission and the President in changing tariff rates to conform to new conditions is a delegation of the legislative function. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 305, 53 S.Ct. 350, 77 L.Ed. 796. In Kleberg & Co., Inc. v. United States, supra, after discussing the Secretary's action under the Antidumping Act, the court said (21 CCPA at page 114):

"* * * The Congress has laid down 'by legislative act an intelligible principle' to which the Secretary of the Treasury is directed to conform, and, therefore, such legislative action is not a forbidden delegation of legislative power."

In the instant case, the Secretary's finding implements the law laid down by Congress; it is part of the legislative process; it applies to all such merchandise which has not been appraised; it changes existing conditions by a new rule that hardboard from Sweden shall be appraised under the Antidumping Act; it is directed toward a general situation and not toward particular persons; it governs all importers of such merchandise, present and future, whether or not they had knowledge of the investigation. It is, therefore, rule making. Adjudication may come later, after an appraisement has been made and the value of a particular importation is in controversy. Norwegian Nitrogen Products Co. v. United States, supra; American Broadcasting Co., Inc. v. United States, D.C., 110 F.Supp. 374.

We conclude that the Administrative Procedure Act is applicable to proceedings under the Antidumping Act of 1921; that the Secretary, in making findings of dumping, is an administrative agency; that the Secretary's finding is rule making; and that, therefore, the rule-making procedure of section 4 (5 U.S.C.A. § 1003), supra, must precede the making of a finding.

■ Section 4 (5 U.S.C.A. § 1003), supra, requires by its terms that the notice be published in the Federal Register,

unless all persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law, and that it shall include a statement of the time, place, and nature of the proceedings to be held, reference to the authority under which the rule is proposed, and either the terms or substance of the proposed rule or a description of the subjects and issues involved.

In the instant case, no notice of proposed rule making was published in the Federal Register nor were all the persons subject thereto named in any way. Importers whose entries of hardboard had not been appraised at the time the investigation was commenced or who made entry during the period of the investigation received notices stating that appraisement was being withheld "pending investigation as to whether or not the said merchandise is being imported in violation of the Antidumping Act of 1921."

This notice does not contain all the information required by the statute nor can it be said that all persons who might be subject to the finding had actual notice, since the finding would affect not only present importers of hardboard but any who might import it in the future. While it has been held that where the scope of the notice is inadequate, actual notice and participation in a hearing may preclude a party from raising the issue (Quaker Oats Co. v. Federal Security Administrator, 7 Cir., 129 F.2d 76; Colorado Interstate Gas Co. v. Federal Power Commission, 10 Cir., 209 F.2d 717, certiorari denied 348 U.S. 818, 75 S.Ct. 30, 99 L.Ed. 645, rehearing denied 348 U.S. 884, 75 S.Ct. 122, 99 L.Ed. 695, reversed on other grounds 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583; Owensboro on the Air, Inc. v. United States, 104 U.S. App.D.C. 391, 262 F.2d 702), it has also been held that actual notice of a regulation does not validate it where neither notice nor the proposed regulation itself was published in the Federal Register. Hotch v. United States, 9 Cir., 212 F.2d 280, 283.

In the case last cited, the court pointed out that failure to comply with the provisions of the Administrative Procedure Act meant that the procedures laid down by Congress for the implementation of agency rules had not been met. The court stated that the Administrative Procedure Act and the Federal Register Act must be read as a part of every congressional delegation of authority and that they:

"* * * set up the procedure which must be followed in order for agency rulings to be given the force of law. *Unless the prescribed procedures are complied with, the agency (or administrative) rule has not been legally issued, and consequently it is ineffective.*" [Emphasis supplied.]

The general rule is that an administrative agency must show substantial compliance with the procedure enjoined upon it by statute in order to give validity to its action. 42 American Jurisprudence, public administrative law, section 99; Sutherland, Statutory Construction, section 4002; Mahler v. Eby, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549.

In William A. Foster & Co., Inc. v. United States, 20 CCPA 15, T.D. 45673, it was claimed that a proclamation of the President, issued under section 315 of the Tariff Act of 1922, increasing certain rates of duty, was illegal and void. In the course of the opinion, the court quoted the provisions of section 315(c), which provided that investigations to assist the President shall be made by the Tariff Commission and that the Commission shall give reasonable public notice of its hearings and shall give interested parties reasonable opportunity to present evidence and to be heard. The court stated that compliance with such provisions was a condition precedent to the issuance of a valid proclamation by the President and that if the President proclaimed a change in rates of duty without a preceding investigation by the Tariff Commission, and without public notice thereof and a reasonable oppor-

tunity for interested parties to participate, his proclamation and the rates of duty fixed would be void.

In Carl Zeiss, Inc. v. United States, 76 F.2d 412, 23 CCPA 7, T.D. 47654, in a proceeding under section 336 of the Tariff Act of 1930, the Tariff Commission gave public notice of a public hearing in connection with an investigation of the differences in cost of production of optical instruments of a class or type *used by* the Armed Forces for fire control. The Commission's findings and the President's proclamation embraced optical instruments *suitable for* fire-control instruments. The court held that the Tariff Commission had extended its investigation from one type of optical instrument to another without any public notice whatsoever and that, consequently, the President's proclamation was without authority of law, illegal, and void.

It is expressly provided that the notice and hearing provisions of section 4(a) of the Administrative Procedure Act (5 U.S.C.A. § 1003(a) ) shall not apply in any situation in which the agency for good cause finds that they are impracticable, unnecessary, or contrary to the public interest, and so states, together with the reasons therefor, when the rule is issued. The House Committee on the Judiciary reported that this provision for exemption is not an "escape clause" but that the agency must publish a supportable finding of necessity or emergency. Legislative history, page 258. It is, therefore, evident that Congress intended that there be strict compliance with the requirements of section 4(a) as a prerequisite to the issuance of a rule.

Section 10(e) of said act (5 U.S.C.A. § 1009(e) ) provides that courts shall hold unlawful any agency action, findings, or conclusions found to be without observance of procedures required by law. In the instant case, public notice and hearing in accordance with section 4(a) and (b) were conditions precedent to the issuance of a valid finding of dumping. Since no such public notice was given, the finding is invalid, and the fact of actual notice to the appellant and other importers cannot serve to validate it.

Section 10(e) provides further that due account shall be taken of the rule of prejudicial error. This provision has been held to mean that unless an error is prejudicial, the action of an administrative agency should not be set aside merely because an error was committed by it. United States ex rel. Lindenau v. Watkins, D.C., 73 F.Supp. 216, 223, reversed on other grounds 2 Cir., 164 F.2d 457.

■ In the instant case, it is claimed that the appellant was not prejudiced by the failure of the Secretary to publish a notice since it had actual notice and did participate in the proceedings. However, we do not think it was the intention of the "prejudicial error" section to repeal the express requirements of section 4 (5 U.S.C.A. § 1003) that notice of proposed rule making shall be published in the Federal Register, unless all persons subject thereto are named and given actual notice thereof and that interested parties be afforded an opportunity to participate in the rule-making process. Under the circumstances of this case, neither actual notice to nor participation by the appellant and other importers satisfy the requirements. The finding of dumping affects not only this plaintiff but all members of the general public who have imported or may import hardboard from Sweden or are or may be domestic manufacturers thereof. Therefore, the fact that a party may not have been prejudiced by an error will not serve to validate a finding which is illegal because of failure to comply with the conditions precedent to the making of a valid finding.

We conclude that the procedural requirements of the Administrative Procedure Act are applicable to the dumping proceedings involved herein; that the Secretary of the Treasury failed to comply with those requirements; and that, consequently, the finding of dumping issued thereafter is invalid.

In view of this holding, it is unnecessary to consider the further grounds of invalidity alleged by the appellant.

We find as facts:

1. That the involved merchandise consists of hardboard, exported from Sweden on November 21, 1953, and entered at New York on December 3, 1953.

2. That, on or about March 31, 1953, the Secretary of the Treasury, without notice or public procedures of any kind, instituted an antidumping investigation of hardboard from Sweden.

3. That, on October 15, 1953, the Acting Commissioner of Customs, acting in accordance with properly delegated authority, directed that appraisements be withheld on all unappraised entries of hardboard from Sweden.

4. That appellant and others received a notice of such withholding on customs Form No. 6459 as to entries unappraised as of October 15, 1953, and as to succeeding entries; and that such withholding continued until the Acting Secretary of the Treasury, on August 26, 1954, made and issued T.D. No. 53567, and published the same in the Federal Register on September 3, 1954.

5. That, prior to the issuance and publication of said T.D. 53567, there was no notice of any kind published in the Federal Register in connection with the proceedings which culminated in the issuance of said finding of dumping.

6. That between May 5, 1953, and August 26, 1954, at the request of officials of the Treasury Department, appellant furnished to the Department, by letter and through counsel, certain information relating to imports of hardboard from Sweden.

7. That the appraiser determined the "foreign market value" and the "purchase price" pursuant to the provisions of the Antidumping Act of 1921 with respect to the hardboard involved herein.

8. That the record does not establish a value for this merchandise different from the appraised value found pursuant to section 402 of the Tariff Act of 1930, as amended.

We conclude as matters of law:

1. That the procedural requirements of the Administrative Procedure Act are applicable to the proceedings leading to a finding of dumping under the Antidumping Act of 1921.

2. That the Secretary of the Treasury in making a finding of dumping is an "agency" subject to the Administrative Procedure Act.

3. That the finding of dumping, issued August 26, 1954, was a rule, and the proceedings leading to the issuance thereof constituted rule making within the meaning of the Administrative Procedure Act.

4. That the Secretary's failure to publish notice of the proposed rule making in the Federal Register, as required by the Administrative Procedure Act, renders the finding of dumping invalid.

5. That the values returned by the appraiser under the Antidumping Act of 1921 with respect to the "purchase price" and "foreign market value" of the involved hardboard were determined pursuant to an invalid finding of dumping and such appraisement is, consequently, invalid.

6. That the plaintiff has failed to overcome the presumptively correct value of the merchandise covered by this appeal, as found by the appraiser, pursuant to section 402 of the Tariff Act of 1930, as amended, and that the value of said merchandise under section 402 is the value returned by the appraiser.

The decision and judgment of the trial court are reversed and judgment will be rendered in accordance with this decision.